The next matter on our calendar is United States v. Reno Conley. Good morning. Larry Elman, Elman Law Firm, Glens Falls, New York, on behalf of the appellant Reno Conley. Since 1992, this Court has consistently held that third-party consent searches of a defendant's home must be reviewed under the two-prong test set forth by this Court in the United States v. Davis. Those two prongs are very simple and straightforward. The first is access. The second is authority. The government concedes that there was no warrant, and the only judicially available exception to the warrant requirement was voluntary consent. However, the government also has to concede that there was no consent from the defendant for the search of defendant's home on September 17, 2017, at 3 a.m. in the morning. The defendant never did. On the other hand, once the government had gotten this supposed consent by the wife, in a situation where at that point they had no reason to believe that the wife was not also living there, because at that point they didn't, when they saw your client and put that to him, your client didn't give any indication that his wife was not living there, did she? There was never a question posed to my client during the interrogation. No, no, there was no, I didn't say there was. I said they put to him that his wife had given that consent, and he never said, oh she doesn't live here, did he? I don't believe it was that clear cut. I think it was more along the lines of we can get consent, or we will get consent. This all happens, none of the interactions with the defendant or the complainant occur at the house. Here's my problem. I agree with you completely, but you can't go, the government, the police can't rely on somebody acting as if they can give consent in an ordinary third party situation. But where you have a husband and wife, where the husband is accused of beating up on the wife at the house, why isn't it perfectly reasonable at that point for the government to would be a valid consent. So then up to the point where they get to the house, and then there's the mother's testimony, no, no, that isn't what's going on, she isn't living here, which I think is pretty clear, the district judge didn't believe that she said that. Now, he given that, what is, what, you know, it seems to me a bit difficult to say that the government didn't have enough to go on. And in these very limited circumstances, I certainly wouldn't want to broaden that in any way. Justice Calabresi, I don't think there's anything you stated that I necessarily would disagree with. The issue though, and the problem is, is the first prong of the Davis test. There's no case in the Second Circuit, and there's been no case in front of the Supreme Court, where third party consent, whether it's under the actual authority or the apparent authority analysis, occurs in a scenario where there's no access by the person who's giving consent. And the first prong doesn't, the failure of the police to have actual access by the third party who's giving them consent, negates the analysis of the apparent authority. Why wasn't it reasonable of them, I mean, to think that she might not have a key with her, because she had to vacate very quickly. These were her things were there, they were married, and it turned out in fact that her clothes were there, they had been living in that bedroom. You think that the legitimacy of their entry depends on whether she had a key in her pocket or not? I think under the case law, the first prong of Davis requires access. And there is no record developed that there was ever any question to her by the police about access with the key. She drove from the residence to where she lived. She was a probation, she was on probation. The reality is the government even concedes that she didn't have actual authority. This case does fall down to reasonableness. Reasonableness is, were the police just wrong? And if they were wrong, was that error reasonable? But that's an analysis that occurs under the authority portion of the two prong test, not the case law. And that's where the legally erroneous conclusion of law, in fact, occurs at the district court level, because there is no suggestion in the record that the complainant had any ability to give access to the police, to the defendant's apartment. What this case stands for is the precedent that any person can sign a preprinted form giving access without limitation, because that's the words the police write on the form, without limitation, despite the fact that they know... You're not drawing a distinction between any person and a husband and a wife? You don't acknowledge any other presumptions that might be reasonable to assume in 2017 that husbands and wives don't live together? You know, I'm much older than that, but I thought that it is still a fairly normal thing for husbands and wives to live together, especially when the claim is made that the husband beat up on this wife in that house, which is certainly suggesting that she was living there. There was a 45-minute interview with the complainant at her house, where her mother lived. There was an additional interview at the police station for Albany City Police Department with the complainant, and an interview with the defendant at the police station. In all of those interviews, in all of those times... Well, the police clearly knew he was on work release, and they clearly knew that he was on work release for a state prison term at the time of his interview, because it was brought up in the interview. I don't believe the law allows that police to be ignorant and to purposefully remain ignorant. There was no meaningful information that could be... was developed or obtained during the testimony of three detectives concerning anything that wasn't written down in the file, and there was nothing written down in the file of note other than she was the wife of the defendant. You reserve two minutes for rebuttal. Thank you, Your Honor. We'll hear from the government. Thank you, Your Honor. This is Rajiv Dosanjh for the government. There's four reasons why the suppression decision should be affirmed here. First, the Albany Police Act reasonably relied on the apparent authority of Mr. Connolly's wife to consent to the search of the residence that she told him they were looking for. The second reason is that Mr. Connolly's wife did not object to the implicit rejection of the testimony of Mr. Connolly's mother, that she denied that Connolly's wife lived at the apartment and objected. Well, but that's pretty, you know, we usually ask for more from the district judge. Yeah, I implicitly believe it. It's, Your Honor, it's true. Pretty bad. Well, Your Honor, he didn't say specifically she did not object. But what he did say is that she was shown the consent and turned and showed them to the bedroom. He also has a footnote saying, even if I were to credit that testimony that she objected, it wouldn't matter. So I think when you read the decision, I don't think there's any room for the notion that he credited her testimony that she objected. Could it have been clearer? Certainly. But I think here the Court has said in the past that it gives implicit findings just as much deference as explicit findings. Again, Your Honor, going back to the list, the third reason is that even if she did object, the question here is the remedy as to Mr. Connolly's Fourth Amendment rights. She may have a remedy if she did object in 1983. No, no. I find that the weakest of the government's arguments. I mean, you know, if a co-resident can say, I don't want, and a resident has said, he has a right to say that no one has given permission. Certainly, Your Honor. But there's no evidence here that he ever told his mother, don't let anyone into this apartment. Don't let anyone into this bedroom. The question is the remedy. And the Supreme Court has been very clear that, you know, if what you're considering is whose Fourth Amendment violation occurred here and is the remedy of suppression of evidence. And a person in Mr. Connolly's position cannot rely on the potential or alleged violation of another person's Fourth Amendment right to seek suppression. I don't think the Supreme Court has said that. But if there was no permission to go into the house. It is right that he was complaining about their bridging. True. It's right. But if you look at, Your Honor, the Georgia v. Randolph case, the Supreme Court expressly said we are not addressing that issue about when you have people living, more than one, two people living, a third-party tenant objects, not the defendant. The Supreme Court was very clear, at least the Justice Souter in his decision, said that we are not addressing that issue. But this is the defendant objecting. I'm sorry, what's that? This is the defendant objecting, isn't it? The very defendant. Here, it depends on what happened at the time the police sought entry. And so in the Georgia v. Randolph, they said we're not addressing the situation where police show up at a door searching for evidence against the defendant and another party objects to their entering. They said we're not addressing that. And Justice Breyer said I'm signing on as the fifth vote on these specific facts, not other facts. And if you look, I think, at the Georgia v. Randolph decision, I think they were very clear that they were drawing very fine lines. And these are fine lines you have to draw. They said you have better arguments. Sure, Your Honor. Your Honor, I would agree with that. As far as the question of access, this Court has made very clear they rely very heavily on Davis. But if you look at the McGee decision, there in footnote 2, they say in McGee, the Davis decision was not intended to be understood as a statement that unless consent conforms to these two prongs, it is invalid. More importantly, the question, the keystone here is, was there common authority over and sufficient relationship to the premises? And the question is, does the apparent authority doctrine extend to the question of whether there was common authority? Can police reasonably believe facts that would suggest to a reasonable person that there was common authority? And in an Illinois v. Rodriguez, the Supreme Court's answer to that in no uncertain terms. Davis, and turning then to the suggestion that this Court has somehow relied on or has required the person giving consent to have actual access, that is not the case. In McGee, the person who was giving access couldn't get into the apartment. But the Court said that's not the question. The question is whether that person had common authority to enter. If they were, if you have to look at the reasons they were locked out, it's not just that the fact that they did not have access at that time. And here, there's no indication that Ms. Connolly was ever locked out. In fact, contrary to what the defendant says in the reply brief, there is actually testimony from Ms., sorry, from Mr. Connolly's mother that his wife did have a set of keys. And she actually locked the door herself on the way out. And this is at, Your Honors, one second. I can give you the citation of the page. My apologies. But that wasn't known by the officers at the time they sought entry, was it? No. So they didn't have, she didn't give them a key, she didn't tell them, I have a key, right? No, no, she did not. That's what we have to examine, right? Exactly. But in terms of, you know, if he's saying that if the test is that you have to, there has to be proof of actual access, A, that's not the case, but B, even if it is, there's indications in the record that she did actually have a set of keys. Moreover, she, the way she described the attack was evident that she had access to the apartment. She fled only out of fear for her life. In his interview with police, Mr. Conley never, when he was asked, when the apartment on North Allen Street was described as where you guys live at, he did not say no, that's not where we live at, or that's not where she lives at. He described the Benson Street apartment where she gave the initial interview as the apartment of her mother and grandmother, not her apartment. All in all, there was just no reason for the police to doubt her apparent authority to grant access. In any event, Your Honor, I think the final point is that the police acted reasonably here, and even if you were to get to this point under Herring, I don't think this is a case where suppression would be warranted. The officers encountered a victim of domestic violence. This was in the middle of the night. Under these circumstances, I don't think the police can be faulted for not having Ms. Conley accompanying them to the apartment. I don't think you want to create a rule that the victim of domestic violence is forced to return to the scene of the attack in order to let police in. That's, I think, precisely the kind of rule you do not want to create. But one could perfectly well have a rule that says whenever you are talking to a third party who acts as if they have a right to access to a property, that the police should ask that party, are you actually living there? Right, and here, Your Honor, she affirmed in her statement that this is my residence. If you look at the consent, she described North Allen Street as her residence. She described the attack as occurring in the bedroom and that she and Conley shared, quote, at their house. She described who lived in the apartment. She knew the familiar with the layout. She said that you were likely to find the gun on the back porch. So for all these reasons, I think, Your Honor, it's clear that the police acted reasonably and under the apparent authority that Ms. Conley had to grant them access. Thank you. Mr. Elman, you've reserved two minutes for rebuttal. It's a very dangerous precedent to state that a complaining witness who has no ability to access a defendant's home can sign a consent form and the police can use that consent form to enter. The reality of this case is, is with that piece of paper, the police had no ability, zero ability to enter the residence, to conduct a search, and to seize any items they found therein. So the question is, could the police reasonably rely on this paper when it was signed by this guy's wife in these circumstances? My first argument is no, because they don't ever get to the issue of, did she have authority, because she, there was no access. There was no ability for her to let, this complaining witness, to let the police access. So whether she had a, the analysis of was the mistake reasonable as to whether she had authority is something the police never should have gotten to because she did not give them access. If she had a key, which I don't think the record says she did, if she had a key, why did they knock repeatedly on the door? They had no ability to access. Absent the ability of a third party to consent to the search of a defendant's home and to provide access, we never get to the issues of actual authority or when the police make that error and mistake whether they have or have not. And you're not saying that she needed to be physically present. If she had had the keys and given those keys to the officers, would she then have had, given them access? I'm not saying she had to be physically present, but there had to be some mode or method for a third party who gives consent to also give access. Well, that's what I'm asking you. If she had had the keys in her pocket and handed them and said, you have my consent, I'm married to this guy, you know, go look and see what you find. It would seem that at a minimum that would be required to provide the police, not just your authority, but your actual ability to get inside as a precondition to determining whether, in fact, you have authority. And if the door was just open? If the door was open and they had authority from somebody who was not present, I would think they could probably enter. But absent the ability to access, that authority, whether it's right or wrong, is meaningless. Thank you for your time. Thank you both.